UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

—————————————————————— x

| | | |
|---|---|---|
| STEVEN and ELLEN PALMER, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:15-cv-2928 |
| | : | CLASS ACTION COMPLAINT |
| *Plaintiffs*, | : | |
| | : | |
| vs. | : | |
| | : | |
| CVS HEALTH and NICE-PAK PRODUCTS, INC., | : | <u>JURY TRIAL REQUESTED</u> |
| | : | |
| *Defendant.* | : | |
| | x | |

—————————————————————

Plaintiffs Steven and Ellen Palmer (the "Palmers" or "Plaintiffs") bring this action on behalf of themselves and all other consumers similarly situated, and allege upon information and belief, formed after an inquiry reasonable under the circumstances, except as to those allegations which pertain to the named *Plaintiffs* (which are alleged on personal knowledge), as follows:

## NATURE OF THE ACTION

1.     This class action is brought against Defendants CVS Health ("CVS") and Nice-Pak Products, Inc. ("Nice-Pak") (collectively referred to as "Defendants") to recover for the harm caused by Defendants' deceptive, improper or unlawful conduct in the design, marketing, manufacturing, distribution, and sale of flushable wipes. Flushable wipes include all wipe products marketed and advertised by manufacturers as able to be flushed without causing harm to plumbing and sewer systems.

2.     In addition to manufacturing CVS/pharmacy® Flushable Cleansing Wipes, CVS/pharmacy® Flushable Ultra Soft  Cleansing Wipes, and CVS/pharmacy® Flushable Moist Wipes (collectively, the "CVS Brand Flushable Wipes"), Defendant Nice-Pak manufactures the brand Total Home by CVS  Flushable Moist Wipes (together with the CVS Brand Flushable Wipes, the "CVS Flushable Wipes").

3.     Because flushable wipes do not disintegrate immediately upon flushing, like toilet paper, they cause serious problems for homeowners and municipalities alike. An article in *New York Magazine* chronicling the problems caused by flushable wipes points out that flushable wipes do not break down as easily as toilet paper, nor can they, if they are to do their job effectively. Unlike toilet paper, flushable wipes must hold up under the pressure of scrubbing *after* being soaked in water and propylene glycol lotion for an extended period of time. To be useful, flushable wipes must be strong enough to do their job effectively, which cannot be done if they disintegrate in water as easily as

toilet paper. Thus "the very thing that makes a wet wipe good at its job makes it a problem once it's discarded."[1]

4.    Plaintiffs and other consumers purchased defective flushable wipes designed, marketed, manufactured, distributed, and sold by Defendants as safe to be flushed (the "Class"). Through the ordinary and/or directed use of flushable wipes, consumers across the country experienced plumbing issues, including clogged toilets, clogged pipes, flooding of home basements and other plumbing problems. Plaintiffs and members of the Class would not have purchased the flushable wipes and/or paid the purchase price for the flushable wipes if they knew that flushing the wipes would cause the wipes to become clogged in sewer or septic systems. Absent Defendants' actions, and had Plaintiffs and members of the Class known of the defective nature of the flushable wipes, Plaintiffs and members of the Class would not have purchased and/or paid the purchase price for the flushable wipes. And, absent Defendants' actions, and had Plaintiffs and members of the Class known of the defective nature of the flushable wipes, Plaintiffs and members of the Class would not have used the flushable wipes in their homes and risked damaging the plumbing systems in their homes, or, worse, causing damage in their homes due to backups caused by the use of flushable wipes.

5.    Defendants' conduct violates the Maryland Consumer Protection Act §13-301 and constitutes negligent misrepresentation, unjust enrichment and a breach of express warranties.

**THE PARTIES**

6.    Plaintiffs are, and was at all relevant times, a resident of Bethesda, Maryland. Plaintiffs regularly purchased CVS Flushable Wipes from various CVS retail stores near their home.

---

[1]    http://nymag.com/news/intelligencer/flushable-wipes-2013-10/index1.html (last visited May 5, 2015).

7.    Defendant CVS, a Rhode Island corporation, is an integrated pharmacy services business that operates in two business segments: pharmacy services and retail pharmacy.  As part of its retail pharmacy business, CVS offers branded and private-label products in a range of merchandise categories, including the Totally Home by CVS brand. It offers candy, snack foods, tobacco, alcoholic and nonalcoholic beverages, and cleaning and institutional supplies; appliances, electronics, health and beauty aids, hardware, office supplies, toys, seasonal items, and automotive supplies; and dry and institutionally packaged foods.  The company also operates pharmacies and one-hour photo centers.  Headquartered in Woonsocket, Rhode Island, CVS common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "CVS."

8.    Defendant Nice-Pak, a New York corporation, together with its subsidiaries and affiliates, designs, manufactures, markets, and distributes branded and private label pre-moistened wipes products.  Nice-Pak manufactures purportedly flushable wipes products under its Nice 'n Clean brand, and it also manufactures similar products for private-label retailers including Costco, Target, and CVS.  As relevant here, Nice-Pak manufactures the CVS Flushable Wipes. Headquartered in Orangeburg, New York, Nice-Pak is a private company with production facilities located throughout the country.

9.    Defendants, upon becoming involved with the manufacture, distribution, advertising, marketing and sale of flushable wipes, knew or should have known that their representations regarding flushable wipes were false and misleading.

## JURISDICTION AND VENUE

10.    This Court has original jurisdiction over this matter, pursuant to 28 U.S.C.S. §1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action of more than 100 potential Class members in which Plaintiffs are citizens of Maryland,

Defendant CVS is incorporated in Delaware with its principal place of business in Rhode Island, and Defendant Nice-Pak is both incorporated and has its principal place of business in New York.

11.     Venue properly lies in this district as the facts and claims at issue in this action are substantially related to *Kurtz v. Kimberly-Clark Corp., et al.*, No. 1:14-cv-1142-JBW-RML and *Belfiore v. The Procter & Gamble Co.*, No. 14-cv-4090-JBW-RML, which are currently pending in this District.

## SUBSTANTIVE ALLEGATIONS

12.     The pre-moistened wipes market is a $6 billion-a-year industry with consumer sales growing approximately 5% each year since 2007.  The industry is expected to grow 6% annually over the next five years.

13.     There are currently no legally enforceable requirements that a product must meet in order to claim that it is "flushable," only voluntary industry guidelines that may be followed at the discretion of manufacturers.

14.     Defendant CVS states, in the respective product overview sections on their website, that the CVS Flushable Wipes are "flushable" and "safe for well-maintained sewer and septic systems," and that the products "break[ ] apart when flushed."[2]

15.     On the packaging of CVS Flushable Wipes, the word "flushable" is clearly displayed, along with a circular logo containing a symbol and the words "sewer and septic safe."

16.     A true and correct representation of the front panel of the package for CVS/pharmacy® Flushable Moist Wipes appears below:

---

[2]     http://www.cvs.com/search/N-0?searchTerm=flushable (last visited May 5, 2015).



17.     In the respective directions sections for the CVS Flushable Wipes, CVS also notes: "For best flushability, use only one or two wipes per flush."[3]

18.     Other flushable wipe brands manufactured by Defendant Nice-Pak make similar flushability claims.  For example, in addition to the CVS Brand Flushable Products, the Total Home by CVS Flushable Moist Wipes makes similar claims on its packaging that the wipes are "flushable."  In fact, according to their website, CVS encourages consumers to compare the Total Home by CVS Flushable Moist Wipes to Cottonelle Fresh Care Wipes, which are similarly labeled as "flushable."  Likewise, the overview section for the Total Home by CVS Flushable Moist Wipes

---

[3]     *See, e.g.*, http://www.cvs.com/shop/baby-child/diapers-wipes/wipes/cvs-pharmacy-flushable-moist-wipes-skuid-793903 (last visited May 5, 2015).  The CVS/pharmacy® Flushable Ultra Soft Cleansing Wipes makes a slightly more restrictive statement: "FLUSH ONLY ONE WIPE AT A TIME."     http://www.cvs.com/shop/baby-child/diapers-wipes/wipes/cvs-flushable-ultra-soft-cleansing-wipes-skuid-942022 (last visited May 5, 2015) (capitalized in original).

states that the product is "[s]afe for most sewers and septics" and that the wipes "break[] apart when flushed," as depicted below:[4]



19.     In addition to the flushable wipes manufactured by Defendants, many other brands of wipes are being marketed as "flushable."  As noted Kimberly-Clark Corporation's Cottonelle brand flushable wipes products are touted as being "flushable" and "sewer- and septic-safe."[5]  Charmin Freshmates are marketed as "flushable wet wipes [that] provide a cleaner clean than dry bath tissue alone,"[6] while Pampers Kandoo Flushable Toilet Wipes are marketed as "your little one's first toilet wipe."[7]  Wet Ones Fresh 'n Flush personal hygiene wipes claim to be "gentle on your plumbing" and

---

[4]     http://www.cvs.com/shop/household-grocery/paper-plastic-products/bath-tissue/total-home-by-cvs-flushable-moist-wipes-refill-skuid-420030 (last visited May 15, 2015).

[5]     https://www.cottonelle.com/products/cottonelle-fresh-care-flushable-moist-wipes

[6]     http://www.charmin.com/freshmates-flushable-wipes.aspx?utm_source=msn&utm_medium=cpc&utm_campaign=Charmin_Search_Desktop_Category+Interest.RF&utm_term=flushable%20wipes&utm_content=8N9FB9pv_flushable%20wipes_e_2095917578 (last visited May 15, 2015).

[7]     http://www.pampers.com/flushable-wipes-kandoo (last visited May 15, 2015).

assure consumers that they can simply "flush 'em away,"[8] and Dynarex Flushable Wipes claim to "easily break[] down back to fibers as [they go] through the pipes."[9]

20.    Large chain retailers are also offering generic brands of wipes that claim to be flushable.  Walmart, for example, purports that its Great Value Flushable Wipes "[b]reak[] apart when flushed" and are "safe for sewer and septic systems,"[10] and that its Equate Flushable Wipes "break apart after flushing like toilet paper, reducing the chance for blockage at home and in waste management systems."[11]  Target claims that its Up&Up Toddler and Family Wipes are flushable and "sewer and septic safe."[12]

21.    Many chain drugstores offer their own brands of wipes purporting to be flushable. Walgreens Flushable Cleansing Cloths claim to be "safe for sewer and septic systems,"[13] and Rite Aid Flushable Moist Wipes claim to be "safe for septic tanks and sewers."[14]

## Homeowner Horror Stories

22.    Despite Defendants' marketing wipes as safe to flush, homeowners from all over the United States have suffered plumbing issues, such as clogged toilets, clogged pipes and flooded

---

[8]    http://www.wetones.com/FreshandFlush.aspx (last visited February 20, 2014).

[9]    http://www.dynarex.com/product.php?family=Flushable_Wipes&itmno=0850 (last visited May 15, 2015).

[10]    http://www.walmart.com/ip/Great-Value-Flushable-Wipes-Refill-100-sheets/23680392   (last visited May 15, 2015).

[11]    http://www.walmart.com/ip/Equate-Flushable-Fresh-Scent-Wipes-144-count/15610928   (last visited May 15, 2015).

[12]    http://www.target.com/p/up-wipes-432ct-toddler/-/-A-13991458#prodSlot=medium_1_3  (last visited May 15, 2015).

[13]    http://www.walgreens.com/store/c/walgreens-flushable-cleansing-cloths/ID=prod6015923-product (last visited May 15, 2015).

[14]    https://shop.riteaid.com/rite-aid-flushable-moist-wipes-50ct-8014677   (last visited May 15, 2015).

basements, as a result of the flushing purportedly "flushable" wipes. The problem with flushable wipes is clear: they do not break down as manufacturers advertise.

23.    In Jacksonville, Florida, Kevin Herbertson learned the truth – that flushable wipes are not flushable – when sewage overflowed into the laundry room and backyard of his 88 year-old mother's home. Herbertson stated that he has spent hundreds of dollars in plumbing services to clear out the clogs caused by flushable wipes.[15]

24.    Frank Freece, the plumber who cleared the pipes at Herbertson's mother's home, said in 2014 alone he has been called to clear "'flushable wipes' stoppages in two to three dozen homes." Freece stated: "They're worse than paper towels or feminine products. . . [b]ut, because they're marked 'flushable,' people think they can just go right on down."[16]

25.    A poster identified as "Nancy," the founder of NancysVacationRentals.com, who owns about 50 rental properties in San Diego, posted on the blog vacationrentalmarketingblog.com about her "horror story" experience with a renter who used flushable wipes.[17]  After the renters, a family of five, called complaining that the toilet was backing up into the shower, Nancy sent a plumber over to snake the drain. The renters then complained a second time, two days later, of the same problem. Since this particular house had never had plumbing issues before, Nancy sent over a different plumber, this time with a camera, to see what the source of the clog was. Nancy wrote: "The first thing this plumber noticed was a package of 'flushable wipes' sitting near each toilet and the camera confirmed that there were 'flushable wipes' hanging on every little piece of rust or corrosion in the cast iron pipes that could possibl[y] snag one of those cloth wipes and he said they

---

[15]    http://www.firstcoastnews.com/story/news/local/consumer/on-your-side/2014/02/17/flushable-wipes-costly-repairs/5559801/ (last visited May 15, 2015).

[16]    *Id.*

[17]    http://www.vacationrentalmarketingblog.com/flushable_wipes/ (last visited May 15, 2015).

never break down." Concerned by this, Nancy called the first plumber who originally came to remedy the problem, and asked him what he had pulled out of the drain. He told her he had pulled out "some type of cloth things." Since the flushable wipe users left the home, Nancy has not had any plumbing issues at the house. After putting in a claim, her insurance paid over $800 in plumbing expenses to remedy the problem caused by the flushable wipes.

26.     A reader identified as "Emery," wrote into Consumerist.com, a consumer watch dog website, complaining that he only used three Cottonelle flushable wipes on three different days, but when he flushed the toilet, they caused a backup. After having a plumber come to snake out his plumbing, the plumber told him that the cause of the backup was something that looked like diapers, which turned out to be the three flushable cleansing cloths.[18]

27.     Jim Kneiszel recently wrote an article for *Pumper*, an e-magazine for pumping contractors, detailing his experience with flushable wipes. Due to a medical condition, Kneiszel's household was using a lot of flushable wipes and purchased them specifically because they were labeled "flushable." One morning, he woke up to three inches of dirty water in his basement caused by "[a] clog of wipes that were hung up in the system before they could fall into the sewer pipe and float away from [his] house." The plumber Kneiszel called to snake out his home's pipes told him: "I don't care what the box says, these wipes are not flushable. And this happens all the time."[19]

28.     Kneiszel posted the photos below, explaining that they depict "how wipes reached the first 5 feet of drainfield, which has to be evacuated and replaced. It took Goodman Sanitation more

---

[18]   http://consumerist.com/2014/02/04/cottonelle-wipes-say-theyre-flushable-but-my-plumber-disagrees/ (last visited May 15, 2015).

[19]   http://www.pumper.com/editorial/2013/06/wipe_out (last visited May 15, 2015).

than a day to repair the clogged system. Technicians removed a half-dozen 50-gallon bags of wipes from the septic system."[20]



**Testing for Flushability**

29.     Consumer Reports performed its own independent disintegration test on flushable wipes that simulated toilet flushing conditions. A video clip of the test showed that standard toilet paper broke down in about eight seconds, but flushable wipes did not break down after ten minutes and, even more shocking, *still* did not break down after being placed in a Kitchen Aid mixer for the same period of time.[21]

30.     The Orange County Sanitation District also conducted its own test to evaluate the dispersibility of allegedly "flushable" products. According to a Staff Report dated May 30, 2012, one sheet of Costco Wholesale Corporation's ("Costco's") Kirkland Signature Moist Flushable Wipes was placed in a one liter sized beaker filled with tap water and containing a stir bar, stirring at

---

[20]    *Id.*

[21]    http://www.consumerreports.org/cro/video-hub/home--garden/bed--bath/flushable-wipes/16935265001/22783507001/ (last visited May 15, 2015).

a speed of 120 rotations per minute.[22]  The Orange County Sanitation District found that the wipe did not break down after a full 24 hours, had remained intact with no change in the wipe's initial dimensions, and was still recognizable after such time.  The Orange County Sanitation District also evaluated toilet paper using the same test and found that the toilet paper rapidly dispersed after about 20 seconds.  The Orange County Sanitation District concluded that because wipes are not able to disperse, they may adversely affect sewer systems, lift stations and wastewater treatment plants.[23]

31.    CBS4 Miami, after investigating damage caused by flushable wipes, hired I-P-S testing, the only independent testing facility in the country, to conduct a slosh box test.  I-P-S put toilet paper, flushable wipes and non-flushable wipes through the same slosh box test.  After one hour, the toilet tissue was barely visible, but the flushable and non-flushable wipes were fully intact.  After two hours, the toilet tissue had dispersed completely, the flushable wipes had "shredded some, but visible chunks still remain[ed]" and the non-flushable wipes had not changed at all.  After three hours, there was "a trace amount" left of the flushable wipes and the non-flushable wipes remained "pretty intact."[24]

32.    On Costco's website, there is a link to a video posted by Cottonelle demonstrating the "dispersability" of Cottonelle Flushable Wipes using the slosh box text.[25]  The video begins with the message: "What you are about to see is unaltered footage of how COTTONELLE FRESH Flushable

---

[22]   http://www.nacwa.org/images/stories/public/2012-08-06ocsddfw.pdf (last visited May 15, 2015).

[23]   *Id.*

[24]   http://miami.cbslocal.com/2014/02/04/the-trouble-with-wipes-in-your-pipes/ (last visited May 15, 2015).

[25]   http://video.costco.com/v/12429/cottonelle-fresh-flushable-moist-wipes/ (last visited May 15, 2015).

Moist Wipes break down in water, so they'll never clog your toilet[,]" followed by Cottonelle's logo.[26]

33.     According to the video, the slosh box test can be used to predict the wipes' ability to break up as they pass through pumps and pipes.  The test begins by placing a Cottonelle Flushable Wipe in a tank filled with tap water.  The tank is then set into motion to "simulate the physical forces acting to disintegrate the product."[27]

34.     The video then jumps to 40-50 minutes later, at which time the wipe is still not completely dispersed, and large chunks of the wipe are still clearly visible.  After 95-110 minutes, the wipe is still not completely dispersed and although smaller, there are still multiple chunks of wipe remaining.[28]  Thus, according to Kimberly-Clark's own slosh box test, Cottonelle Flushable Wipes do not fully disperse after a full 110 minutes.

35.     According to a video posted by Kimberly-Clark, the company's flushable wipe products go through testing to ensure "flushability."  Such tests include: (i) the toilet and drain line test; (ii) the sloshbox disintegration test; and (iii) the municipal pump test.[29]

36.     Defendants' toilet and drain line test consists of flushing wipes through only 68 feet of drainline and are supposedly tested on toilets "from all major global regions where K-C-Flushable Wipes are sold."[30]  The video depicts a wipe being flushed down a toilet and flowing through a clear

---

[26]     *Id.*

[27]     *Id.*

[28]     *Id.*

[29]     http://www.youtube.com/watch?v=2FrXNWr2-xo&feature=youtu.be (last visited May 15, 2015).

[30]     *Id.*

tube, appearing to be mostly intact.  Kimberly-Clark states in the video: "As you can see, [the wipes] easily pass through properly maintained toilets and drainlines."[31]

37.     As Kimberly-Clark states in its video, "it is important that flushable materials do not accumulate in the pump, which could lead to decreasing pump efficiency and potentially clogging the pump."[32]  Kimberly-Clark's municipal pump test consisted of putting one wipe through the pump every ten seconds for ten minutes.  The test found that the average pump's power did not "increase significantly during the test[,]" which Kimberly-Clark claims it would have if the wipes had accumulated inside the pump.  Kimberly-Clark concluded that this test shows that its flushable wipes "pass through pumps without clogging, interfering or causing strain."[33]

38.     The slosh box test is meant to "determine the potential of materials to disintegrate when subject to agitation in water."[34]  Kimberly-Clark's own slosh box test found that the wipe began to break down into "smaller pieces" in 35 minutes and reduced to fibers after three hours.[35] The company claims that "by breaking up this way, [its] wipes can safely pass through municipal pump stations commonly present in city sewers."[36]

---

[31]  *Id.*

[32]  *Id.*

[33]  *Id.*

[34]  *Id.*

[35]  *Id.*

[36]  *Id.*

**Problems Caused for Municipal Sewers Across the County**

39.     However, utility officials say that wipes cause a problem because in actuality, they reach a pump in just a matter of minutes, and also because many sewer systems move sewage using gravity, which does not create the same level of agitation used in tests like Kimberly-Clark's.[37]

40.     In addition, newer toilets that use three-gallon flushes, as opposed to older models that use five-gallon flushes, are also unable to push whole, undispersed wipes down sewage lines.[38] Thus, the problem is further exacerbated when wipes are flushed down a newer toilet into an old line without the needed amount of water to flush it, resulting in the wipes not being fully flushed and remaining behind in the system.[39]

41.     Unsurprisingly, if wipes make it through home plumbing systems and are not fully disintegrated when they leave individual homeowners' pipes, they wreak havoc on city sewer systems.  Cities across the country have suffered thousands, if not millions, of dollars in damage to city sewer and water systems due to flushable wipes.

42.     When the wipes flow through the home plumbing and sewer systems at various stages of disintegration, they can mix with grease and congeal to form masses in home and city pipelines. According to Operations Manager of the Charleston Sanitary Board, Tim Haapala, wipes create serious problems for municipal sewer lines, especially when they get mixed up with grease in drains, which results in developing masses in city pipelines that are very expensive to remove.  Haapala stated: "They're not degradable.  That's the problem."[40]

---

[37]   http://articles.washingtonpost.com/2013-09-07/local/41850520_1_baby-wipes-sewer-toilet-paper (last visited May 15, 2015).

[38]   http://www.wvgazette.com/News/201310270044 (last visited May 15, 2015).

[39]   *Id.*

[40]   *Id.*

43.    Haapala described the slow buildup of wipes mixing with grease and other debris in pipes "like cholesterol in a vein."[41]    Below is a photo of a Charleston Sanitary Board customer's lateral pipe, which was completely clogged with wipes and had to be removed.[42]



44.    The problem is occurring all over the country, according to Cynthia Finley, Director of Regulatory Affairs for the National Association of Clean Water Agencies ("NACWA").[43]    In fact, the problem is not even limited to the continental United States.  In Honolulu, Hawaii, Jesse Broder Van Dyke, a spokesperson for Honolulu Mayor Kirk Caldwell, stated: "The wipes clog sewer lines, pump stations and treatments plants."[44]    Markus Owens, a Honolulu Department of Environmental Services spokesperson, stated: "These wipes contribute to recurring problems at our pumping

---

[41]    *Id.*

[42]    *Id.*

[43]    http://www.usatoday.com/story/news/nation/2013/07/16/wipes-pollution/2522919/ (last visited May 15, 2015).

[44]    http://www.civilbeat.com/articles/2013/10/11/20030-new-age-toilet-paper-clogging-honolulus-sewer-pipes-causing-headaches/ (last visited May 15, 2015).

stations; they do not break down, and create additional work for our crews who have to repeatedly remove them on a monthly or weekly basis."[45]

45.     According to Finley, "[c]onsumers are being told by the packaging that these things are flushable" and "[a]lthough the material might make it through the toilet and the pipes leading away from the house, they tend to clog up once in the sewer system . . . That can cause huge headaches for the utilities."[46]

46.     In London, perhaps the most dramatic example of the effects flushable wipes can have on sewer systems came to light in the summer of 2013 in the form of "fatberg." Fatberg was a 15-ton, bus-size clog in London's sewer system that took three weeks to dislodge.[47] Fatberg was made up of wipes and coagulated fat, which built up to the point where it blocked a sewer main. Gail Hailwood of Thames Water stated: "The sewer was almost completely clogged. If we hadn't discovered it in time, raw sewage could have started spurting out of manholes across the whole of Kingston. It was so big it damaged the sewer and repairs will take up to six weeks."[48]

47.     Carter Strickland, commissioner of the New York City Department of Environmental Protection, when interviewed about the problem flushable wipes are causing, told *New York Magazine*: "You can safely say [it's costing us] millions of dollars."[49] One of Strickland's aide's provided *New York Magazine* with an estimate that the cost caused by flushable wipes is "about $18

---

[45] *Id.*

[46] http://www.usatoday.com/story/news/nation/2013/07/16/wipes-pollution/2522919/ (last visited May 15, 2015).

[47] http://www.theguardian.com/environment/2013/aug/06/fatberg-london-sewer-grease-blockage (last visited May 15, 2015).

[48] *Id.*

[49] http://nymag.com/news/intelligencer/flushable-wipes-2013-10/ (last visited May 15, 2015).

million per year for extra disposal, and that doesn't include staff overtime and damaged equipment."[50]

48.     Although screens have been used to filter wipes out, "[t]he Wards Island treatment plant seems to be getting the worst of it, but all around the city, huge gray-black masses of synthetic fiber, steeped in every foul fluid that's gone down the drain, are regularly being extracted, by hand, from pipes and pumps.  Jammed, snarled equipment frequently breaks down, causing 'a lot of downtime.'"[51]

49.     According to Strickland, the problem is that wipes, unlike toilet paper, are meant to hold up under soaking a scrubbing, and are "very, very strong, pound for pound, like [a] spiderweb."[52]

50.     Andrew Jantzer, General Manager of wastewater facilities at York City Wastewater Treatment Plant in Pennsylvania, stated: "At our plant we have a five foot pipe that comes in and all of the sewage comes into that pipe.  The first thing it does is goes through these giant rakes, and it rakes out all of the flushable products that have not broken down.  The more we can get out at the head of the plant the better.  It causes a lot of havoc throughout the rest of the plant if it makes it through.  It clogs the pumps and channels and all kinds of tanks and other things that we have at the treatment plant."[53]

51.     In Raleigh, North Carolina, sewer overflows and backups are predominately caused by flushable wipes, according to the city's environmental coordinator for wastewater, Marti

---

[50]   *Id.*

[51]   *Id.*

[52]   http://nymag.com/news/intelligencer/flushable-wipes-2013-10/index1.html (last visited May 15, 2015).

[53]   http://todaynewsgazette.com/flushable-wipes-clogging-pipes/ (last visited May 15, 2015).

Gibson.[54]  The problem is so bad that Raleigh now has an ordinance prohibiting the flushing of anything except human waste, toilet paper and water.[55]

52.    In Bemus Point, New York, local officials fed up with dispatching crews "at least once a week to clear a grinder pump that would seize up trying to shred the fibrous wipes"[56] set up "basket strainers in sections of pipe leading to an oft-clogged pump [] to figure out which households the wipes were coming from.  They mailed letters and then pleaded in person for residents to stop flushing them."[57]

53.    In San Antonio, Texas, where there is over 9,000 miles of sewer line to keep clog-free, San Antonio Water System ("SAWS") Communications Director Anne Hayden stated: "Ignore the flushable label, because it's not . . . It adds additional layers of cleanup we already have to do to our pipes.  People have to go out in the summer heat and manually extract the buildup and it's not pleasant."[58]  SAWS crews remove three to five tons of debris, enough to fill a 15-foot-long dump truck with debris, per day.  Joshua Trent, a member of a four-person SAWS crew, explained when flushable wipes get stuck in the sewer system, they "make it easier for items as small as plastic bags

[54]  http://www.usatoday.com/story/news/nation/2013/07/16/wipes-pollution/2522919/ (last visited May 15, 2015).

[55]  *Id.*

[56]  http://www.kctv5.com/story/23508880/flushable-wipes-clog-sewer-lines (last visited May 15, 2015).

[57]  http://www.today.com/money/what-bummer-flushable-wipes-blamed-sewer-woes-4B11235939 (last visited May 15, 2015).

[58]  http://www.expressnews.com/news/local/article/Flushable-wipes-clean-everything-but-sewers-4724397.php#/6 (last visited May 15, 2015).

and prophylactics to items as large as car tires, engine blocks and even live animals like turtles, snakes and birds to become lodged in siphon boxes."[59]

54.    Some cities, like Grand Rapids, Michigan, are trying to deal with the problem by educating their citizens and asking them not to flush wipes down the toilet.  Grand Rapids officials have sent out a mass mailing to homeowners reminding them "no wipes in the pipes."[60]  One public education mailer sent out to Grand Rapids homeowners states: "Convenience wipes such as baby, hygienic, cleaning and disinfectant, as well as toilet bowl scrubbers and even paper towels might be labeled as 'disposable or flushable' but these items should not go down the drain.  Products like these do not break down in the sewer system.  They can cause plugs in sewer pipes and pumps and result in sewage backups, costly cleanups and environmental consequences that can cause rate increases."[61]

55.    In addition to Grand Rapids, Waukesha, Wisconsin, Ocean City, Maryland and Sitka, Alaska are just some examples of cities who have publically asked residents not to flush wipes that are labeled as flushable.[62]

56.    The blockages caused by flushable wipes are becoming increasingly costly for municipalities.   In California, the Orange County Sanitation District had 971 "de-ragging" maintenance calls on ten pump stations in a single year costing the District $320,000.[63]

---

[59]  *Id.*

[60]  http://www.usatoday.com/story/news/nation/2013/07/16/wipes-pollution/2522919/ (last visited May 15, 2015).

[61]  http://grcity.us/enterprise-services/Environment-Services/Pages/Environmental-Tip-3.aspx (last visited May 15, 2015).

[62]  http://www.washingtonpost.com/local/increasingly-clogged-sewers-attributed-to-popular-flushable-wipes/2013/09/23/d29bdab6-2451-11e3-ad0d-b7c8d2a594b9_story.html (last visited May 15, 2015).

57.    Some municipalities, like the Washington Suburban Sanitary Commission, have turned to purchasing expensive equipment to deal with the problem. The Commission estimates that is has spent more than $1 million on equipment to shred wipes and prevent blockages.[64]

58.    In Vancouver, Washington, officials estimate they have spent over $1 million replacing three large sewer pumps and eight smaller sewer pumps that were constantly becoming clogged.[65] Frustrated with dealing with problems caused by flushable wipes, Vancouver sewer officials conducted their own experiment in which they dyed several different kinds of wipes and sent them through the sewer for a mile. The result – the wipes labeled flushable had "little rips and tears but still they were intact" said engineer Frank Dick.

59.    Washington D.C. alone has already spent millions to repair and prevent clogging of city pipes caused by flushable wipes.[66] Utility DC Water sends workers on "wipes patrol" and has reported that an estimated 500 man-hours have been needed to deal with wipes clogging sewer systems over the span of a year.[67]

60.    According to Mary Gugliuzza, Media Relations Coordinator for the Fort Worth Water Department, once wipes make it to the city plant they must be separated and sent to dumpsters or landfills, which costs city residents thousands of dollars.[68] Because the wipes do not break down

---

[63]   http://www.pwmag.com/wastewater/strangled-by-disposables.aspx (last visited May 15, 2015).

[64]   http://grcity.us/enterprise-services/Environment-Services/Pages/Environmental-Tip-3.aspx (last visited May 15, 2015).

[65]   *Id.*

[66]   http://www.mnn.com/your-home/at-home/blogs/increasingly-popular-flushable-wipes-wreak-havoc-on-utilities (last visited May 15, 2015).

[67]   *Id.*

[68]   http://dfw.cbslocal.com/2013/10/04/so-called-flushable-wipes-causing-pipe-sewer-problems/ (last visited May 15, 2015).

fully as soon as they are flushed, they can get caught up in various stages of the sewer system including pumps, lift stations and treatment plants.[69]

61.    Roxanne Beal from Frederick County, Maryland's Well and Septic Division, told *The Frederick News-Post*: "I will tell you from experience that these products do not biodegrade before they catch and clog in a private sewer system . . . (they) become almost like a pile of cement in your tank."[70]  In 2013 alone, Frederick County had to deal with five sewer overflows, with two of them believed to be caused by wipes.  Just one of the overflows resulted in 450 gallons of wastewater spilled and clean-up costs of $1,500.  In light of these issues, the Frederick County Health Department now takes the position that even products labeled "flushable" should be thrown in the trash, and not flushed down toilets.[71]

62.    Municipalities and homeowners share in the frustration that wipe products labeled and advertised as flushable continue to be sold.  *The New York Post* has observed that NACWA has been receiving complaints that flushable wipes were causing clogging and backups in sewer systems for the last 4 years.  The newspaper also noted that these complaints "roughly coincide[] with the ramped-up marketing of the 'flushable cleansing cloths' as a cleaner, fresher option than dry toilet paper alone."[72]  In addition, *New York Magazine*,[73] *USA Today*,[74] *Huffington Post*,[75] and numerous local news outlets have all reported on plumbing and sewer problems caused by flushable wipes.

---

[69]    *Id.*

[70]http://www.fredericknewspost.com/news/economy_and_business/business_topics/consumer/county-don-t-flush-what-says-flushable/article_ba4388b3-e1ba-531b-8970-05a2d6cb7a7b.html    (last visited May 15, 2015).

[71]    *Id.*

[72]    http://nypost.com/2013/09/23/flushable-bathroom-wipes-blamed-for-massive-sewer-clogs/ (last visited May 15, 2015).

[73]    http://nymag.com/news/intelligencer/flushable-wipes-2013-10/ (last visited May 15, 2015).

**The FTC's Enforcement Action Against Nice-Pak**

63.    On May 18, 2015, the Federal Trade Commission (the "FTC") announced that it entered into a consent order with Nice-Pak in connection with Nice-Pak's labeling of its flushable products.

64.    The consent order stemmed from allegations that defendant Nice-Pak made misleading representations in its advertising and marketing of its flushable moist wipes, including CVS Flushable Wipes.  According to the consent order and associated documents, Nice-Pak lacks adequate substantiation for the claim that its flushable wipes products are safe for household plumbing, household septic systems, and public sewer systems.  According to the FTC's complaint, Nice-Pak violated the FTC Act by misrepresenting that its wipes: (1) are safe for sewer systems, (2) are safe for septic systems; (3) break apart shortly after being flushed, and (4) are safe to flush.

65.    Specifically, the FTC's complaint alleges that "[b]ecause of their composition, non-woven fabrics do not break down in water in a reasonably short amount of time. As a result, products made from them can clog household plumbing systems, household septic systems, public sewer systems, and sewage treatment plant systems after being flushed."[76]  The complaint also charges that the materials Nice-Pak disseminated to its customers "did not accurately reflect real-world conditions Nice-Pak Wipes would encounter after being flushed (i.e., conditions that exist in

---

[74]    http://www.usatoday.com/story/news/nation/2013/07/16/wipes-pollution/2522919/ (last visited May 15, 2015).

[75]    http://www.huffingtonpost.com/2013/09/23/bathroom-wipes-clog_n_3977082.html (last visited May 15, 2015).

[76]    Complaint, *In the Matter of Nice-Pak Products, Inc.*, File No. 132-3272, at 1, *available at* https://www.ftc.gov/system/files/documents/cases/150518nice-pakcmpt.pdf (last visited May 18, 2015).

household toilets, plumbing, or septic systems, or in public sewer systems or public wastewater treatment facilities)."[77]   The complaint further asserts that Nice-Pak:

> alone or in concert with others…developed unsubstantiated flushability claims for use by its trade customers based on this purported substantiation. Through these means, [Nice-Pak] provided trade customers with the means and instrumentalities to deceive consumers by disseminating these unsubstantiated flushability claims in marketing…Nice-Pak Wipes under private labels, such as…CVS's Flushable Cleansings Wipes

66.    As part of the proposed consent order, Nice-Pak is prohibited from making any representation that its flushable wipes: (1) are safe for sewer systems, (2) are safe for septic systems, (3) break apart shortly after flushing, (4) will not clog household plumbing systems, (4) will not clog household septic systems, (5) are safe for plumbing, (6) are safe to flush, (7) dissolve or disperse when interacting with water, or (8) are flushable, unless the representation is based on "competent and reliable evidence," including "tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results."[78]

67.    The consent order requires Nice-Pak to demonstrate that its flushable wipes "disperse[] in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment."   The term flushable, according to the consent order, means that the flushable product "disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard

---

[77]   *Id.* at 2.

[78]   Agreement Containing Consent Order, *In the Matter of Nice-Pak Products, Inc.*, File No. 132-3272, at 3, *available at* https://www.ftc.gov/system/files/documents/cases/150518nice-pakorder.pdf (last visited May 18, 2015).

wastewater equipment" and that testing to substantiate the use of the term flushable on a products must "substantially replicate the physical conditions of the environment in which the Covered Product is claimed, directly or indirectly, expressly or by implication, to be properly disposed of; or, if no specific environment is claimed, then in all environments in which the product will likely be disposed of." [79]

68.     Products labeled as flushable must disperse so that to not get stuck in or clog homeowners' plumbing systems, and requires manufacturers of purported "flushable" wipes to design products that not only pass through homeowners' home plumbing systems, but also do not cause damage to municipal sewer lines, sewage treatment plants or other public wastewater treatment facilities.

## FACTUAL ALLEGATIONS RELATED TO THE PLAINTIFF

69.     Beginning around 2012, Plaintiffs began purchasing CVS Flushable Wipes in and around Bethesda, Maryland.

70.     After flushing Defendants' purportedly flushable wipes products down their home toilets, Plaintiffs experienced plumbing issues, including clogging of their home plumbing and sewer back-ups.  In particular, around October 2014, Plaintiffs' sewer system backed up and, as a result, Plaintiffs had to employ the help of  professional plumbers to come and snake their home plumbing. Upon snaking the plumbing system, the plumber removed still-intact flushable wipes products and warned Plaintiffs that flushing wipes products labeled as flushable "will destroy your system." The plumber also suggested that Plaintiffs look on the internet or run a "Google search" for complaints about products labeled as flushable.  Plaintiff did so and saw several articles, including one from the Washington Post, which detailed the damage that flushing purportedly-flushable products caused homeowners and municipalities.

---

[79]   *Id*. (empahsis added).

71.    The initial snaking conducted in the Plaintiffs' home, however, did not fully clear Plaintiffs' pipes, causing the plumber to return at least one more time to finish clearing the pipes.

72.    At no point did Plaintiffs flush any products down their toilets other than human waste, toilet paper, and the CVS Flushable Wipes.  And after being advised by their plumbers not to flush anything down their toilet other than human waste and toilet paper, Plaintiff stopped purchasing the CVS Flushable Wipes altogether.

73.    Prior to purchasing CVS Flushable Wipes, Plaintiffs read the label on the products, which indicated that the wipes were "flushable[,]" and purchased the CVS Flushable Wipes specifically because they were advertised as safe to flush down toilets. Wipes labeled by Defendants as "flushable" cost more than similar products without misleading advertisements and misrepresentations regarding their flushability, and would have cost less absent the false and misleading information. Furthermore, Plaintiffs purchased them because they were labeled as "flushable" and would not have purchased the wipes had they not been labeled as such.

74.    Plaintiffs and members of the Class paid more for Defendants' flushable wipes than they otherwise would have had they not been misled by the false and misleading labeling and advertisements and misrepresentations complained of herein.

75.    In addition to sustaining damages associated with paying more money per wipe for flushable wipes rather than purchasing comparable, but non-flushable, wipes, Plaintiffs also sustained damages in the form of significant plumbing costs to unclog the piping in their home.

76.    Plaintiffs were unaware and could not have discovered, even in the exercise of reasonable diligence, that Defendants' flushable wipe products would cause harm to their home plumbing when flushed.

77. Plaintiffs and members of the Class would not have purchased Defendants' flushable wipes at the prices they did, or would not have purchased the flushable wipes at all, absent Defendants' false and misleading misrepresentations.

78. For these reasons, Defendants' flushable wipes were worth less than what Plaintiffs and members of the Class paid for them.

79. Plaintiffs and members of the Class were induced to, and did, purchase flushable wipes instead of competing products based on the false statements and misrepresentations described herein.

80. Plaintiffs and members of the Class lost money as a result of Defendants' deception in that they did not receive what they paid for. In particular, Plaintiffs have incurred significant plumbing costs as from the hiring of professional plumbers.

81. Plaintiffs and members of the Class altered their position to their detriment and suffered damages in an amount at least equal to the amount they paid for Defendants' flushable wipes.

## PLAINTIFF'S EXPERIENCE IS REPRESENTATIVE OF THE EXPERIENCE OF THE CLASS

82. Plaintiffs and members of the Class experienced plumbing and sewer problems after flushing flushable wipes down home toilets.  Because of these issues, Plaintiffs and members of the Class could not flush the wipes down toilets without suffering harm to the plumbing in their homes.

83. Defendant CVS denies that flushable wipes cause any harm to plumbing, sewer or septic systems and continue to represent that their flushable wipes are able to be flushed without any adverse consequences.

84. The aforementioned problems described by online posters and consumers evince prevalent and ongoing problems experienced by purchasers of flushable wipes, including Plaintiffs

and the Class members.  CVS's misleading marketing and advertising of flushable wipes by CVS cause similar problems, which, upon information and belief, were apparent and are known to CVS. Although flushable wipes may be used and disposed of in the garbage, like non-flushable wipes, Defendants market and sell flushable wipes at a higher cost than comparable, non-flushable wipes. For example, a CVS/pharmacy® Brand Flushable Moist Wipes Refill costs $0.11.9 per wipe, whereas comparable CVS/pharmacy® brand wipes products that are not labeled as flushable sell for $0.02.4 per wipe, or nearly four times the cost of flushable wipes.  Rather than properly labeling or including a sufficient warning on flushable wipes packaging, Defendant CVS has ignored complaints surrounding products labeled as flushable, thereby causing injury or damage to Plaintiffs and members of the Class while providing themselves with additional and unjust financial gain.

## CLASS ACTION ALLEGATIONS

85.    Plaintiffs brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) individually and as a class action on behalf of the following proposed classes:

> *National CVS Class: All persons and entities in the United States who purchased the CVS Flushable Wipes.*
>
> *Maryland CVS Class: All persons and entities in the State of Maryland who purchased the CVS Flushable Wipes.*

86.    Upon completion of discovery with respect to the scope of the Class, Plaintiffs reserve the right to amend the Class definition.  Excluded from the Class is Defendants, its parents, subsidiaries and affiliates, directors and officers, and members of their immediate families.  Also excluded from the Class are the Court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.

87.    Numerosity: The Class is so numerous that joinder of all individual members is impracticable.  While the exact number and identities of members of the Class are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, upon information

and belief, Plaintiffs allege that the Class is comprised of thousands of individual members geographically disbursed throughout the United States.  The number of Class members and their geographical disbursement renders joinder of all individual members impracticable if not impossible.

88.    Commonality: There are questions of fact and law common to members of the Class that predominate over any questions affecting solely individual members including, *inter alia*, the following:

(a)    whether Defendants misrepresented the effect of flushing flushable wipes on plumbing and sewers, and otherwise mislabeled flushable wipes so as to have the consumer believe that the flushable wipes would not cause harm to home plumbing and sewers;

(b)    whether the actions and activities of Defendants violated consumer fraud provisions of Maryland Consumer Protection Act §13-301;

(c)    whether Defendants' business practices violate Maryland law, for which Plaintiffs and members of the Class may recover damages;

(d)    whether Defendants knew or should have known that the labeling on flushable wipes was false when issued;

(e)    whether Defendants misled consumers into believing that the flushable wipes were able to be flushed without adverse effects on plumbing and sewer systems;

(f)    whether Defendants breached their warranties to consumers concerning the flushable wipes;

(g)    whether Defendants was unjustly enriched by the sale and distribution of the misbranded or mislabeled flushable wipes to consumers;

(h)    whether Plaintiffs and members of the Class are entitled to statutory relief;

(i)    whether Plaintiffs and members of the Class are entitled to punitive relief;

- 28 -

(j)    whether Plaintiffs and members of the Class are entitled to compensatory relief; and

(k)    whether Plaintiffs and members of the Class have sustained damages, and, if so, what is the proper measure of damages.

89.    Typicality: Plaintiffs' claims are typical of the members of the Class they seek to represent.  Plaintiffs and all other members of the Class sustained damages arising out of Defendants' common course of conduct as complained herein.  The losses of each member of the Class were caused directly by Defendants' wrongful conduct alleged herein.  The amount of money at issue is such that proceeding by way of class action is the only economical and sensible manner in which to vindicate the injuries sustained by Plaintiffs and members of the Class.

90.    Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of the other members of the Class.  Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiffs have retained competent counsel experienced in litigation of this nature.

91.    Plaintiffs bring this action under Rule 23(b)(3) because common questions of law and fact predominate over questions of law and fact affecting individual members of the Class.  Indeed, the predominant issue in this action is whether Defendants mislabeled and falsely advertised their flushable wipes and whether that mislabeling and false advertising caused damages to Plaintiffs and the members of the Class.  In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy.  Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiffs envisions no unusual difficulty in the management of this action as a class action.

92.    In addition, the Class may also be certified under Rule 23(b)(2) because:

(a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

93.    The undersigned counsel for Plaintiffs and the Class request that the Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Federal Rule of Civil Procedure 23(g).  Undersigned counsel will fairly and adequately represent the interests of the Class, have identified or investigated the Class' potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the Class, and are best able to represent the Class.

## COUNT I

### Negligent Misrepresentation

94.    Plaintiffs repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

95.    Starting  no later than 2012, Defendants misrepresented to Plaintiffs and the Class the effects flushing flushable wipes down toilets has on plumbing and sewer systems.

96.     Starting no later than 2012, Defendants omitted material facts regarding the effect flushing flushable wipes down toilets has on plumbing and sewer systems.

97.     Defendants owed a duty to Plaintiffs and the Class to exercise reasonable care when issuing statements or disclosures regarding the nature flushable wipes.

98.     Upon information and belief, the statements or disclosures regarding the ability of flushable wipes to be flushed without having adverse effects on plumbing and sewer systems were likely to deceive or confuse Plaintiffs and members of the Class.

99.     In reliance upon Defendants' representations that the CVS Flushable Wipes products were flushable, Plaintiffs purchased the products and flushed them down their home toilets.

100.    The referenced claims have also influenced or are likely to influence future decisions of consumers and the buying public.  Plaintiffs and the Class, by purchasing flushable wipes, reasonably acted in reliance upon the truth of the representations made by Defendants.

101.    As a direct and proximate result of the Plaintiffs' and the Class' reliance upon the representations made by Defendants, as described above, Plaintiffs and the Class have sustained damages and ascertainable loss.

## COUNT II

### Breach of Express Warranty

102.    Plaintiffs repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

103.    Beginning at an exact date unknown to Plaintiffs, but at least since three years prior to the filing date of this action, and as set forth herein, Defendants represented to the public, including Plaintiffs, on the label of their CVS Flushable Wipes and other flushable products, the product was safe to flush down the toilet.  For example, Defendants represented to the public, including Plaintiffs, by their advertising, packaging and other means, that flushable wipes are "sewer and septic safe" and

"break up after flushing."  These promises became part of the basis of the bargain between the parties and thus constituted an express warranty.

104.    Thereon, Defendants sold the flushable wipes to Plaintiffs and other Class members, who bought the flushable wipes from retailers selling Defendants' flushable wipe products.

105.    Defendant Kimberly-Clark breached the express warranty in that the goods did not, in fact, flush without adverse consequences to home plumbing and sewer systems as set forth in detail herein.  As a result of this breach, Plaintiffs and other consumers in fact did not receive goods as warranted by Defendants.

106.    As a proximate result of this breach of warranty by Defendant, Plaintiffs and other consumers have been damaged in an amount to be determined at trial.

## COUNT III

### Violations of the Maryland Consumer Protection Act §13-301

107.    Plaintiffs repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

108.    Defendants have used and employed unconscionable commercial practices, deception, fraud, misrepresentations, and/or the knowing concealment, suppression, and/or omission of material facts with the intent that others rely thereon (or, in the case of an omission, with the belief that the parties were ignorant of the true facts), in connection with the marketing, distributing, sale, and advertisement of the flushable wipes.

109.    Plaintiffs and the other members of the Class, unaware of Defendants' deception, purchased Defendants' flushable wipe products.  Had Plaintiffs and the other members of the Class known that Defendants was deceiving them, they would not have purchased flushable wipes or paid the price that they did.

110.    By virtue of the foregoing, Defendants has violated the Maryland Consumer Protection Act §13-301.

111.    As a direct and proximate result of Defendants' actions, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## COUNT IV

## Unjust Enrichment

112.    Plaintiffs repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

113.    As a result of Defendants' fraudulent and misleading labeling, advertising, marketing and sale of its flushable wipes, Defendants were enriched at the expense of Plaintiffs and members of the Class.

114.    It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits received from Plaintiffs and members of the Class, in light of the fact that flushable wipes were not flushable, as Defendants purported them to be.  Thus, it would be unjust and inequitable for Defendants to retain the benefits without restitution to Plaintiffs and members of the Class of all monies paid to Defendants for the products at issue.

115.    As a direct and proximate result of Defendants' actions, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against Defendant for himself and the members of the Class as follows:

A.    An Order determining that this action is a proper class action and certifying Plaintiffs as a representative of the Class;

B.      An Order awarding statutory, compensatory and punitive damages in favor of Plaintiffs and the other Class members against Defendant for Defendants' violation of the Maryland Consumer Protection Act §13-301, and for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      An Order declaring Defendants' practices to be improper, unfair, unlawful and/or deceptive and requiring Defendant to provide refunds to Plaintiffs and members of the Class;

D.      A temporary, preliminary or permanent injunction: (i) ordering Defendant to make disclosures, through corrective advertising, to inform the public of the true nature regarding the effect on plumbing when flushable wipes are flushed; (ii) enjoining Defendant from selling flushable wipes until the proper disclosures set forth above are issued; and (iii) ordering Defendant to waive or reimburse any fees to be incurred by consumers in connection with plumbing services needed to repair plumbing systems;

E.      Disgorgement and restitution;

F.      An Order awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

G.      Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs hereby demands a trial by jury.

DATED: May 20, 2015                    ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       SAMUEL H. RUDMAN
                                       MARK S. REICH
                                       SEAN T. MASSON
                                       LAUREN E. KARALIS


                                       _____
                                       MARK S. REICH

- 34 -

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mreich@rgrdlaw.com
smasson@rgrdlaw.com
lkaralis@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
STUART A. DAVIDSON
MARK DEARMAN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
mdearman@rgrdlaw.com

*Attorneys for Plaintiffs*