FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2019 DEC -4 AM 11: 36

CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Steven and Ellen Palmer, Individually and on  \*
Behalf of All Others Similarly Situated       \*      Civil Action No. CCB-17-938
                                              \*
v.                                            \*      CLASS ACTION
                                              \*
CVS Health and Nice-Pak Products, Inc.        \*

## MEMORANDUM

Steven and Ellen Palmer (the "Palmers") filed this putative class action against CVS Health and Nice-Pak Products, Inc. (the "defendants") alleging that they misleadingly labeled their wipes as "flushable" when they were not. Now pending are the defendants' motion for leave to file amended answers and the defendants' motion for judgment on the pleadings as to the Palmers' claims for injunctive relief, negligent misrepresentation (as to Nice-Pak), and breach of express warranty.[1] The motions have been fully briefed and no oral argument is necessary. For the reasons stated below, the court will grant the motion for leave to file amended answers, and will grant in part and deny without prejudice in part the motion for judgment on the pleadings.

## FACTS

The Palmers began purchasing CVS Flushable Medicated Wipes in 2012. (Corrected Compl. ¶ 68, ECF 21). CVS Flushable Medicated Wipes, as well as CVS Flushable Cleansing Wipes and CVS Flushable Ultra Soft Cleansing Wipes, are manufactured by Nice-Pak. (Id. ¶¶ 2, 8). The wipes were advertised as safe to flush down toilets, but when the Palmers began flushing the wipes down their home toilets, they experienced plumbing issues. (Id. ¶¶ 69, 72). Around October 2014, their sewer system backed up, and they employed professional plumbers to snake

---

[1] The Palmers also brought claims for violations of the Maryland Consumer Protection Act § 13-301, for unjust enrichment, and for negligent misrepresentation as to CVS. The defendants do not seek to dismiss these claims.

1

their home plumbing. (*Id.* at ¶ 69). Upon snaking the plumbing, the plumbers found still-intact flushable wipes products and warned the Palmers that flushing these wipes "will destroy your system." (*Id.*). After being advised to search online, the Palmers saw several articles detailing the damage the flushable wipes could cause. (*Id.*). A plumber had to return at least one more time to clear the Palmers' pipes. (*Id.* ¶ 70). The Palmers allege that many others faced similar "horror stories" wherein the purportedly flushable wipes damaged their plumbing, (*id.* ¶¶ 21–27), and also allege that flushable wipes have caused problems in municipal sewer systems across the country, (*id.* ¶¶ 38–61).

The Federal Trade Commission ("FTC") began investigating Nice-Pak's flushable wipes, and entered into a consent agreement with Nice-Pak in 2015.[2] (*Id.* ¶ 62). Under that agreement, the FTC ordered Nice-Pak not to market its wipes as flushable "unless the representation is non-misleading, and, at the time the representation is made, Respondent possesses and relies upon competent and reliable evidence[.]" (FTC Decision and Order at 2, *In the Matter of Nice-Pak Products*, ECF 177-4). The order is in effect until October 30, 2035, or twenty years from the most recent date the United States or the FTC files a complaint alleging a violation of the order. (*Id.* at 5).

The Palmers initially filed in the Eastern District of New York. On April 10, 2017, the case was transferred to this court. *Steven v. CVS Health & Nice-Pak Products, Inc.*, No. 15-CV-2928, 2017 WL 656767, at *2 (E.D.N.Y. Feb. 17, 2017); Order, ECF 121 (case to be transferred April 10, 2017). On May 9, 2018, the court granted the parties' motion to stay,[3] pending decisions in the related cases *Kurtz v. Kimberly-Clark Corp. et al.*, No. 14-cv-1142, and *Belfiore*

---

[2] Although the agreement does not contain a date, it appears that the Agreement Containing Consent Order (ECF 177-3) was entered into on May 18, 2015. (*See* Corrected Compl. ¶ 62). It was then open for comments (*see* Letter from D. Clark to K. Schmid, ECF 177-2), and on October 30, 2015, the FTC issued the Final Decision and Order (ECF 177-4).

[3] This case previously had been stayed on May 30, 2017, pending the *Kurtz* and *Belfiore* decisions. (ECF 145).

2

*v. Proctor & Gamble Co.*, No. 14-cv-4090 (on appeal in the Second Circuit)[4], and *The Preserve at Connetquot Homeowners Assoc., Inc. v. Costco Wholesale Corp., et al.*, No. 17-cv-7050 (E.D.N.Y.). (ECF 164). On January 28, 2019, the court in *Preserve* dismissed the case without prejudice for lack of standing. (Status Report, ECF 165). *Preserve* is currently on appeal. (Status Report, ECF 170). On May 14, 2019, the Second Circuit issued a summary order in *Kurtz* and *Belfiore*, remanding the cases to the U.S. District Court for the Eastern District of New York for further proceedings on the Rule 23(b)(3) predominance requirement.[5] (*Id.* at 2). The stay in this case was lifted on June 25, 2019. (ECF 173).

## STANDARD OF REVIEW

Motion for leave to amend:

Leave to amend should be freely granted under Rule 15(a), and amendments are generally accepted absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (explaining that leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.").

Motion for judgment on the pleadings:

Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) are decided under the same standard as motions to dismiss under Rule 12(b)(6). *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

---

[4] *Kurtz* and *Belfiore* were heard by the Second Circuit in tandem.
[5] On remand, the district court again concluded that the predominance requirement was met. *Kurtz v. Kimberly-Clark Corp.*, __ F. Supp. 3d __, 2019 WL 5483510, at *12 (E.D.N.Y. Oct. 25, 2019).

3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

Leave to amend:

CVS and Nice-Pak seek to amend their answers to add the additional defenses of: lack of class action standing, primary jurisdiction, statute of limitations, speculative damages, failure to plead punitive damages, injunctive relief is moot, spoliation of evidence, compliance with federal and industry standards and, for Nice-Pak only, lack of privity.

The court will grant the defendants' motion to amend. Although this case was filed in 2015 and transferred to this court in 2017, there has been no formal discovery because of the requested stays and the motion for judgment on the pleadings.[6] The Palmers have not shown that

---

[6] Although there has been no formal discovery, it appears the defendants produced approximately 19,000 documents and 77,000 pages to the Palmers in January 2018 upon agreement of the parties. (ECF 193; ECF 194).
Additionally, the parties filed a proposed discovery plan pending resolution of defendants' motion for judgment on the pleadings, which the court approved on September 13, 2019 (ECF 194), and a stipulated protocol for collection

4

they relied on the affirmative defenses asserted in the answers in taking any action in this case, and have not shown that allowing the amendments would prejudice them. Although the Palmers cite to *Rangarajan v. Johns Hopkins Health System Corp.*, in that case, the court denied the plaintiff's motion to amend her complaint because the amendment "would inescapably lead to a second motion to dismiss and round of briefing which would further delay the start of any discovery" and "[t]he proposed amendment would fundamentally change the nature of Plaintiff's claims." No. WMN-12-1953, 2015 WL 1712270, at *3 (D. Md. April 14, 2015). Here, there is no showing that allowing the defendants to amend their answers would result in any additional briefing, delay discovery, or fundamentally change the nature of the case.[7]

Standing for injunctive relief:

Plaintiffs seeking injunctive relief must show they are "in danger of being injured by the opposing party's conduct and that the danger is both 'real' and 'imminent.'"[8] *Gardner v. Montgomery Cnty. Teachers Fed. Credit Union*, 864 F. Supp. 2d 410, 421 (D. Md. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Therefore, "[a] plaintiff has standing to sue for injunctive relief when there is a 'real or immediate threat' that the party will suffer an injury in the future." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (citation omitted). Relevant here, the Ninth Circuit has held that "a previously

---

and production of electronically stored information and hard copy documents, which the court approved on September 17, 2019 (ECF 197).

[7] The Palmers further argue that the defenses of spoliation of evidence, speculative damages, the failure to plead punitive damages, and failure to plead class action standing are not proper affirmative defenses and do not need to be pled in the answer. The court will permit the defendants to amend their answers to include these defenses, without deciding whether they are properly labeled as affirmative defenses. If they are not required to be pled in the answer, as the Palmers argue, then the Palmers "can claim no prejudice by the court's permitting amendment. In fact [the Palmers] benefit[] from the defendants' advance notice of their intent" to raise these defenses. *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155–56 (4th Cir. 1995).

[8] "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) (citations omitted).

5

deceived consumer may have standing to seek an injunction against false advertising or labeling" if she plausibly alleges "that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or that "she might purchase the product in the future, despite the fact that it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018).

The Palmers do not plausibly allege a likelihood of future injury. They do not allege that they want to or plan on purchasing the flushable wipes in the future. Rather, they allege that "after being advised by their plumbers not to flush anything down the toilet other than human waste and toilet paper, [they] stopped purchasing the CVS Flushable Medicated Wipes altogether." (Corrected Compl. ¶ 71). The complaint also alleges that the Palmers purchased the wipes because they were labeled as "flushable" and "would not have purchased the wipes had they not been labeled as such." (*Id.* ¶ 72). Therefore, the complaint does not contain any allegations of future injury, but instead implies that the Palmers do not plan on purchasing these wipes in the future.

The Palmers urge this court to follow the lead of other courts that have relaxed the future injury requirement in consumer protection cases.[9] *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("To hold otherwise would denigrate the New York consumer protection statute[.]"); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395(DLI)(RMI), 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) ("This is the harm New York's and

---

[9] The Palmers also cite to two Fourth Circuit cases, but both required the plaintiffs to show a likelihood of future injury to obtain injunctive relief. *PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 127 (4th Cir. 2011) (district court did not abuse its discretion by finding a likelihood of future injury when "PBM's reputation was, and potentially continues to be, damaged" as a result of a competitor sending mailers with false claims); *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 456 (4th Cir. 2017) (plaintiff sufficiently alleged a likelihood of future injury when he plausibly stated he would return to a location that was not compliant with the Americans with Disabilities Act).

California's consumer protection statutes are designed to redress.").[10] These cases, however, are in contrast to the opinions of several other courts, including the Second Circuit and a court in this circuit, that have held plaintiffs lack standing to seek injunctive relief when they do not sufficiently allege a likelihood of future harm. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (plaintiff did not have standing to seek an injunction relating to the sale of an appetite suppressant because he did not allege a likelihood of future harm); *Hassan v. Lenovo*, No. 5:18-CV-105-BO, 2019 WL 123002, at *6 (E.D.N.C. Jan. 7, 2019)[11] (plaintiff did not have standing to seek injunctive relief in a products liability action because "he does not allege that he intends to buy another Phab 2.").[12]

Because the Palmers do not sufficiently allege a likelihood of future injury, the court will dismiss their request for injunctive relief. Accordingly, the court has no reason to consider the defendants' primary jurisdiction argument.[13]

Negligent misrepresentation claim against Nice-Pak:

To establish a claim for negligent misrepresentation under Maryland law, a plaintiff must prove:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false

---

[10] *See also Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012). *Ries v. Az. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012), also cited by the Palmers, found a likelihood of future injury when "the record is devoid of any grounds to discount plaintiffs' stated intent to purchase in the future." But here, the Palmers have not alleged any intent to purchase flushable wipes from CVS or Nice-Pak in the future.
[11] Unreported decisions are cited for the soundness of their reasoning, not for any precedential value.
[12] *See also Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 566 (S.D.N.Y. 2017) ("Courts that have permitted plaintiffs to seek injunctive relief under similar circumstances have done so for public policy reasons" but "they appear to confuse whether a plaintiff has Article III standing to sue in federal court with whether the purposes of the state law would be furthered by permitting plaintiffs to seek injunctive relief," and noting that plaintiffs are still free to pursue their claims in state court); *see also Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 194 (D.D.C. 2013) (declining to conclude "that public policy requires plaintiffs to have standing here, notwithstanding the requirements of Article III" but instead finding the plaintiffs had sufficiently alleged a likelihood of future harm).
[13] The defendants also argue in their motion that "[t]o the extent Plaintiffs seek to represent a class of consumers who purchased the Cleansing Wipes or Ultra Soft Cleansing Wipes" the Palmers cannot do so because they only purchased the "CVS Flushable Medicated Wipes." (Defs.' Mot. for Judgment on the Pleadings at 15, ECF 177). The court declines to consider this argument until the Palmers actually seek to certify the class.

statement; (2) the defendant intended that the statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, took action in reliance on the statement, and (5) the plaintiff suffered damage proximately caused by the defendant's negligence.

*Swinson v. Lords Landing Village Condo.*, 360 Md. 462, 477 (2000).[14] "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent." *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 534–35 (1986). "[T]he rationale underlying the requirement of privity or its equivalent as a condition of liability for negligent conduct, including negligent misrepresentations, resulting in economic damages [is] to avoid liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 671 (2000) (internal quotation marks and citation omitted). To determine whether there is an intimate nexus, courts should focus on the defendant's knowledge, that is, whether "the relationship of the litigants was close enough that the defendant knew that the plaintiff was likely to take some action based on what the defendant said or did." *Select Exp., LLC v. Am. Trade Bindery, Inc.*, 178 Md. App. 607, 615 (2008) (citation omitted).

As an initial matter, it is not clear from the complaint whether Nice-Pak was responsible for the labeling of the CVS flushable wipes. Assuming they were, Nice-Pak had no interactions with the Palmers, making it difficult to find "contractual privity or its equivalent." Further, finding an intimate nexus between Nice-Pak and consumers of its flushable wipes could subject Nice-Pak to damages "in an indeterminate amount for an indeterminate time to an indeterminate class," which is what the intimate nexus requirement was meant to avoid. The court, however, declines to decide the issue now, without additional information about Nice-Pak's role in

---

[14] The parties do not dispute that Maryland law applies.

labeling the wipes.[15] Additionally, because a number of the Palmers' claims against Nice-Pak will proceed, the parties would have to engage in discovery related to negligent misrepresentation even if that specific claim were not in the case. Therefore, the court will deny without prejudice the defendants' motion for judgment on the pleadings as to the negligent misrepresentation claim against Nice-Pak.

<u>Breach of express warranty claim against Nice-Pak:</u>

An express warranty is established by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," or "[a]ny description of the goods which is made part of the basis of the bargain." Md. Code. Ann., Com. Law. § 2-313(1). To prevail on a claim for breach of express warranty under Maryland law, "a plaintiff is required to establish that 1) a warranty existed; 2) the product did not conform to the warranty; and 3) the breach proximately caused the injury or damage." *SpinCycle, Inc. v. Kalender*, 186 F. Supp. 2d 585, 589 (D. Md. 2002) (citation omitted).

"Privity of contract remains an essential ingredient . . . in a breach of express warranty action not involving personal injury, because privity between the plaintiff and defendant is requisite to maintain a contract action unless the plaintiff is either a donee beneficiary or a creditor beneficiary." *Addressograph-Multigraph Corp. v. Zink*, 273 Md. 277, 280 (1974); *see also Wood Prods., Inc. v. CMI Corp.*, 651 F. Supp. 641, 649 (D. Md. 1986) ("Privity is . . . required in an action for breach of express warranty . . . in which only economic loss is claimed."); *H & M Co., Inc. v. Technical Heat Transfer Servs., Inc.*, No. TDC-14-1518, 2015 WL 1472000, at *4 (D. Md. March 30, 2015) ("H & M's claim for breach of express warranty will be dismissed because privity is a required element for such a claim.").

The Palmers do not allege they were in privity with Nice-Pak, as it appears they bought

---

[15] Further, neither side proffered case law directly relevant to these specific factual circumstances.

9

the wipes from CVS and not from Nice-Pak. Nor do they allege that they were a donee beneficiary or creditor beneficiary of any contract entered into by Nice-Pak. *C.f. Lawley v. Northam*, No. ELH-10-1074, 2011 WL 6013279, at *13 (D. Md. Dec. 1, 2011) (finding "a genuine dispute of material fact regarding the Lawleys' argument that they are third-party beneficiaries to the contract" with respect to their breach of warranty claim). Therefore, they have failed to allege privity, which is necessary for their breach of express warranty claim.[16] For these reasons, the court will dismiss the Palmers' breach of express warranty claim against Nice-Pak.

Breach of express warranty claim against CVS:

Under Md. Code, Com. Law, § 2-607(3)(a), a buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *See Frericks v. Gen. Motors Corp.*, 278 Md. 304, 310 (1976); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 542 (D. Md. 2011) (involving a claim for breach of implied warranty).[17] Where such notice is not given, the buyer loses "the right of his remedy." *Lynx, Inc. v. Ordnance Prods., Inc.*, 273 Md. 1, 17 (1974) (internal quotation marks omitted).

The Palmers appear to concede that they did not provide pre-suit notice to CVS; rather, they argue that the "pre-suit notice requirement is not served" here as the defendants had ample notice of the defect because of the "long history of consumer complaints and litigation on these

---

[16] The Palmers cite to *Ault v. J.M. Smucker Co.*, but that case is inapposite because it relies on New York law, which apparently does not require privity in a breach of express warranty claim. No. 13 Civ. 3409(PAC), 2014 WL 1998235, at *7 (S.D.N.Y. May 15, 2014) ("[P]rivity between Plaintiff and Defendant is not required."). The Palmers also cite to *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 475 (E.D.N.Y. 2013), which found a "special relationship between the parties" necessary for a negligent misrepresentation claim, but is not relevant to whether the Palmers can show privity on their express warranty claim.

[17] *Doll*, as well as *Lynx, Inc. v. Ordnance Products, Inc.* and *Lloyd v. General Motors Corp., infra*, involve claims for breach of implied warranty, not for breach of express warranty. It does not appear, however, that § 2-607(3)(a)'s notice requirement applies differently to a claim for breach of implied warranty than it does to a claim for breach of express warranty. *See* § 2-607(3)(a) (referring to "any breach" without distinction between breaches of express or implied warranty); *Frericks*, 278 Md. at 306, 316 (1976) (analyzing claims for breach of express and implied warranty under the notice requirement); *see also Brown-High v. L'Oreal USA, Inc.*, No. GJH-17-276, 2017 WL 5952688, at *4 (D. Md. Nov. 29, 2017) (same).

issues." (Pls.' Opp'n to Defs.' Mot. for Judgment on the Pleadings at 22–23, ECF 186). "This kind of 'notice,' however, is not what the law requires." *Lloyd v. Gen. Motors Corp.*, 575 F. Supp. 2d 714, 723 (D. Md. 2008). The Palmers provide no Maryland case to support their argument that a court may disregard the pre-suit notice requirement when it is not served in a particular situation.[18] Therefore, the court will also dismiss the Palmers' breach of express warranty claim against CVS.[19]

## CONCLUSION

For the reasons stated above, the court will grant the defendants' motion for judgment on the pleadings as to the Palmers' request for injunctive relief and their claim for breach of express warranty against CVS and Nice-Pak. The court will deny the motion without prejudice as to the Palmers' claim for negligent misrepresentation against Nice-Pak. The court also will grant the defendants' motion for leave to file amended answers. A separate order follows.

12/4/19
Date

/s/ CCB
Catherine C. Blake
United States District Judge

---

[18] *Brown-High* looked to the intent of § 2-607 in finding it did not bar a remedy, but in different circumstances. 2017 WL 5952688, at *4. There, the buyer provided pre-suit notice to the manufacturer but not the seller. *Id.* The court looked to the rationale of § 2-607 to find that when "the manufacturer has been provided with sufficient pre-suit notice, the underlying policy of § 2-607 has been satisfied," and suit was permitted against the manufacturer. *Id.* Here, though, the Palmers did not provide pre-suit notice to the seller, CVS, or the manufacturer, Nice-Pak.

[19] Courts have held that if a buyer fails to provide pre-suit notice to the seller, the buyer is also barred from maintaining a breach of warranty action against the manufacturer. *See Doll*, 814 F. Supp. 2d at 542 (citing *Lloyd*, 575 F. Supp. 2d at 723 ("It is only logical . . . that a consumer's failure to observe [the pre-suit notice requirement] should provide the manufacturer with an affirmative defense.")). Therefore, aside from the lack of privity with Nice-Pak, Palmers' breach of express warranty claim against Nice-Pak also would fail for lack of pre-suit notice.